## UNITED STATES of America, Plaintiff–Appellee,

v.

## James B.A. NIVEN, Defendant–Appellant.

### No. 90–50110.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 1991.

Decided Dec. 23, 1991.

Michael J. Treman, Santa Barbara, Cal., for defendant-appellant.

Carolyn Kubota, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BOOCHEVER, KOZINSKI and O'SCANNLAIN, Circuit Judges.

PER CURIAM:

James B.A. Niven appeals his sentence for mail and wire fraud. Niven contends that the district court erred in calculating his adjusted offense level. Niven asserts eight errors: (1) an erroneous loss calculation; (2) incorrect adjustment for role as supervisor or manager; (3) refusing to give a downward adjustment for acceptance of responsibility; (4) inclusion of prior convictions when he was not represented by counsel; (5) considering that he was on unsupervised release at the time of his present offense; (6) separately sentencing him for offenses initiated before November 1, 1987 rather than treating them as continuing offenses completed after that date; (7) including the pre-Guidelines portions of the total loss when determining both the pre-Guidelines and Guidelines sentence; and (8) not limiting the order of restitution to the offenses for which he was convicted. We consider each in turn.

I

Pursuant to Guidelines section 2F1.1, the district court determined that the loss attributable to Niven's criminal conduct was between $2 and $5 million dollars and, accordingly, added ten points to Niven's base offense level. Niven contests the district court's loss calculation.[1] We review the district court's legal interpretations of the Guidelines de novo, and its factual determinations made in the course of applying the Guidelines for clear error. *United States v. Wilson*, 900 F.2d 1350, 1355 (9th Cir.1990).

"The cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level, regardless of the number of counts of conviction." U.S.S.G. § 2F1.1, comment (n. 6). "The amount of loss need not be precise.... The court need only make a reasonable estimate of the range of loss, given the available information." *Id.*, comment (n. 8). Here, the Federal Bureau of Investigation's accounting revealed that Niven had taken $7.7 million and had returned approximately $3.7 million to investors. Thus, the district court's estimate, based upon the FBI accounting, that the loss ranged between $2 and $5 million was not clearly erroneous.

II

Niven challenges the two-point offense-level increase for his role in the offense as an "organizer, leader, manager, or supervisor." U.S.S.G. § 3B1.1(c). Section 3B1.1 applies only when the offense is committed by more than one person who is criminally responsible for the commission of the offense. *United States v. Anderson*, 942 F.2d 606, 616–17 (9th Cir. 1991) (en banc). Here, although there was some evidence before the district court from which it could so conclude, the record is not clear whether the district court's upward adjustment was based on a finding

1. The loss table contained in section 2F1.1 has been subsequently amended. However, we apply the Guidelines provision effective as of the date of Niven's sentencing. *See United States v. Mims*, 928 F.2d 310, 312 n. 1 (9th Cir.1991).

that Eric Laing was also criminally responsible for the offenses. Accordingly, we remand this case to the district court to reconsider this upward adjustment in light of *Anderson.*

### III

■ Niven contends that he was entitled to a two-point offense level reduction for "acceptance of responsibility" pursuant to section 3E1.1 of the Guidelines. We review a district court's decision on acceptance of responsibility for clear error. *See United States v. Ramos,* 923 F.2d 1346, 1360 (9th Cir.1991).

As evidence of his acceptance of responsibility, Niven notes that he testified at trial, admitting that he formed the companies and made the representations for which he was charged. Likewise, Niven notes that he substantially cooperated with the government in this complicated, document-laden proceeding.

If these factors comprised the sum total of the evidence regarding Niven's acceptance of responsibility, we might be inclined to agree. However, there is more. The district court observed:

> During the trial, [Niven] showed no contrition. In my view he testified falsely in certain instances.... [¶] But in terms of a judgment about his credibility and contrition, I am convinced he has none. It seems to me he is a cold and callous individual and that he ought to suffer some of the same miseries he's caused others.
>
> When I looked upon this defendant, as I do all, I looked for some redeeming feature and found none. Zero. That's unusual.

Based upon our review of the record, we cannot say that the district court's observations were clearly erroneous. Accordingly, we conclude that the district court's refusal to give a downward adjustment for acceptance of responsibility was not erroneous.

### IV

Niven also contests the two-point adjustment to his criminal history score. His prior convictions, Niven contends, should not result in such a high criminal history score since (1) he was not represented by counsel on one conviction, and (2) it was pure fortuity that he was on unsupervised probation at the time of the present offense, as any "greater" sentence would have already been completed.

■ The use of uncounseled convictions to increase a criminal history score was considered by Application Note 6 to section 4A1.2 of the Guidelines which, prior to November 1, 1990, provided that "if to count an uncounseled misdemeanor conviction would result in the imposition of a sentence under circumstances that would violate the United States Constitution, then such conviction shall not be counted in the criminal history score." Here, we find no such constitutional violation. The Constitution is implicated when a defendant is tried, over his objection, without state provision of counsel. *See Scott v. Illinois,* 440 U.S. 367, 369–70, 99 S.Ct. 1158, 1159–60, 59 L.Ed.2d 383 (1979). In contrast, an uncounseled misdemeanor may be used to enhance a subsequent sentence where the lack of counsel is not due to operation of law, but because the defendant knowingly waived his right to counsel. *Cf. Baldasar v. Illinois,* 446 U.S. 222, 223, 228, 100 S.Ct. 1585, 1585, 1588, 64 L.Ed.2d 169 (1980).

### V

■ We are also unpersuaded by Niven's argument concerning his probationary (albeit unsupervised) status. In *United States v. McCrudden,* 894 F.2d 338 (9th Cir.), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1534, 108 L.Ed.2d 773 (1990), we held that "[t]he non-supervisory status of a sentence of probation does not exempt it from section 4A1.1(d)." *Id.* at 339. It is true that had Niven been jailed for the second offense rather than given probation, he would have had a lower criminal history score. However, we see no inconsistency. A subsequently enhanced penalty is not an unfair exchange for a prior grant of leniency. *See id.* ("It is not unreasonable to enhance the punishment of an offender

who again violates the law before fully serving his prior punishment.").

## VI

■■■ An offense initiated before November 1, 1987 but not completed until after that date comes within the ambit of the Sentencing Guidelines. *See United States v. Gray*, 876 F.2d 1411, 1418 (9th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990). Niven reasons that his offenses were "continuing offenses" completed after November 1, 1987, and thus, they meet this criterion for exclusive sentencing under the Guidelines.

"[T]he doctrine of continuing offenses should be applied in only limited circumstances." *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). An offense should not be deemed continuous "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* As this passage makes clear, the analysis turns on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue. Here, the offenses at issue—18 U.S.C. §§ 1341 and 1343—criminalize each specific use of the mail or wire. Each offense is complete when the fraudulent matter is placed in the mail or transmitted by wire, respectively. Thus, the offenses for which Niven was convicted are not continuing offenses, and the district court did not err in sentencing him under pre-Guidelines law for those counts committed prior to November 1, 1987.

## VII

■■■ Niven next contends that, even if certain counts pre-date the Guidelines, the inclusion of losses associated with those counts in calculating the loss under U.S.S.G. § 2F1.1 subjected him to multiple punishment for the same offenses. The question before us, then, is how a sentencing court should calculate an offense level under the Guidelines, when the amount of loss upon which it usually would rely has already served as the basis for a separate pre-Guidelines sentence.

The district court sentenced Niven to five years imprisonment for those counts involving offenses completed from late 1982 to November 1, 1987, the effective date of the Sentencing Guidelines. For the counts encompassing crimes committed between November 1, 1987, and the time of his arrest in November 1988, the district court used the total losses incurred over the six-year period to increase Niven's adjusted offense level by ten points. *See* U.S.S.G. § 2F1.1(b)(1)(K) (1988). Thus, the district court may have considered the pre-Guidelines loss incurred prior to November 1, 1987 in imposing the pre-Guidelines sentence of five years, yet counted that loss again in calculating the fifty-one month sentence under the Guidelines.

When offenses would require grouping of multiple counts under section 3D1.2(d), as is the case here, the Guidelines state that the relevant conduct in determining the applicable guideline range includes "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (1988). The Sentencing Guidelines do not, however, empower a sentencing court to count *again* the same loss the court already had considered in imposing a pre-Guidelines sentence.[2] Inclusion of the pre-Guidelines portion of the total loss when determining both the pre-Guidelines and Guidelines sentences potentially violates the Double Jeopardy Clause, which "protects against multi-

---

**2.** The Sentencing Commission apparently agrees:

> If the relevant conduct for an offense committed on or after November 1, 1987, overlaps with conduct sanctioned as part of a pre-November 1 count, there would be a potential for double counting unless the pre-guideline counts were sentenced concurrently. The court will have to carefully fashion the sentence with these concerns in mind.

U.S. Sentencing Comm'n, *Questions Most Frequently Asked About the Sentencing Guidelines* 4 (Dec.1990).

ple punishments for the same offense." *United States v. Gonzalez*, 800 F.2d 895, 897 (9th Cir.1986). We must ascertain whether construction of a provision of the Sentencing Guidelines is " 'fairly possible by which the constitutional question may be avoided.' " *United States v. Watt*, 910 F.2d 587, 592 (9th Cir.1990) (quoting *United States v. Security Indus. Bank*, 459 U.S. 70, 78, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982)).

The government argues that the district court has discretion to order that a sentence imposed on the pre-Guidelines counts be served consecutively to a sentence imposed on the Guidelines counts. *See United States v. Parks*, 924 F.2d 68, 71 (5th Cir.1991); *United States v. Watford*, 894 F.2d 665, 669 (4th Cir.1990). There are, however, two distinct issues involved. The threshold issue of whether a court can calculate an offense level for a Guidelines count by using losses for which the defendant already has been sentenced is a legal question that does not involve any discretion. Only after this question is answered would one consider the issue of whether pre-Guidelines and Guidelines sentences should run concurrently or consecutively.

The record is unclear whether the district court prevented multiple punishment by rendering a shorter pre-Guidelines sentence than it would have otherwise, because the court foresaw that it would be taking the total amount of losses into account when sentencing as to the Guidelines counts. Hence, we remand and direct the court to make an express finding as to the sums of monies lost as a result of the offenses underlying the pre-Guidelines counts and Guidelines counts, and to calculate the Guidelines sentence solely with reference to losses not considered in imposing the pre-Guidelines sentence. Alternatively, the court may aggregate the amount of losses in calculating the offense level for the Guidelines sentence, so long as it imposes concurrent sentences for the pre-Guidelines and Guidelines offenses.

3. The district court instructed the parties to agree upon these two items, a task accom-

## VIII

Invoking the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. §§ 3663 and 3664, the district court ordered Niven to pay restitution in the amount of $1,635,978. The district court arrived at this figure by (1) identifying victims seeking restitution, and (2) determining the losses inflicted upon each identified victim based upon the government's tracing of investor funds.[3] Niven contends that the restitution order exceeds that authorized by the VWPA.

We agree. In *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the Supreme Court held that restitution under the VWPA must be limited to the offense of conviction. *Id.* at 1981; *see also United States v. Garcia*, 916 F.2d 566, 567 (9th Cir.1990). Prior to *Hughey*, in *United States v. Pomazi*, 851 F.2d 244 (9th Cir.1988), we held that the offense of wire fraud "includes the fraudulent scheme . . . and restitution may be ordered in an amount caused by the entire scheme rather than only in the amount caused by a particular mailing." 851 F.2d at 249 (quotation omitted). *Pomazi*, however, was overruled by *Hughey*. *See United States v. Sharp*, 941 F.2d 811, 814–15 (9th Cir.1991). "Even when the offense of conviction involves a conspiracy or scheme, restitution must be limited to the loss attributable to the specific conduct underlying the conviction." *Id.* The restitution order here exceeded that authorized by the VWPA as construed in *Hughey*.

"The appropriate remedy for a sentence imposed in excess of the sentencing court's authority is to vacate the entire sentence and remand for resentencing." *United States v. Blue Mountain Bottling Co. of Walla Walla*, 929 F.2d 526, 529 (9th Cir.1991). This is true even where only the restitutionary portion of a sentence is vacated. *See id.; see also Sharp, United States v. Jenkins*, 884 F.2d 433, 441 (9th Cir.1989), *cert. denied*, 493 U.S. 1005, 110 S.Ct. 568, 107 L.Ed.2d 562 (1990).

plished during a brief recess in the sentencing phase.

## IX

We vacate Niven's sentence and remand for resentencing. If the government again seeks an upward adjustment under section 3B1.1(c), the district court should consider the request in light of *United States v. Anderson*, 942 F.2d 606 (9th Cir.1991) (en banc).

VACATED and REMANDED.