**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert MORALES, Sr., Defendant–
Appellant.**

No. 92–50279.

United States Court of Appeals,
Ninth Circuit.

Argued March 2, 1993.

Submission Deferred March 2, 1993.

Resubmitted March 18, 1993.

Decided Dec. 10, 1993.

Philip Halpern, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Eugene G. Iredale, San Diego, CA, for defendant-appellant.

Before: SCHROEDER, THOMPSON, and O'SCANNLAIN, Circuit Judges.

SCHROEDER, Circuit Judge:

Robert Morales, Sr., appeals his sentence following his guilty plea to multiple counts of various crimes arising out of corrupt practices Morales engaged in while an employee of the Internal Revenue Service. The crimes involved many transactions over a period of years ending when Morales was terminated from his employment in March of 1990.

The principal questions in this appeal pertain to his guilty plea to conspiracy to defraud the United States, Count 1, and to his conviction for bribery in violation of 18 U.S.C. § 201 (1988), Count 3.

Appellant first maintains that a two-level enhancement of his sentence for bribery pursuant to Federal Sentencing Guideline 2C1.1(b)(1) constituted an ex post facto application of the Guidelines. That Guideline provision mandates a two-level increase in the base offense level if the offense "involved more than one bribe." That Guideline provision became effective November 1, 1989. The appellant contends that while he engaged in many bribery transactions, only one bribe occurred after the effective date of that Guideline. One of appellant's schemes involved receipt of payments in return for helping Mario Saikhon evade fourteen million dollars in taxes. Appellant maintains that the multiple payments he received from Mr. Saikhon after the effective date of the Guidelines and continuing until termination of his employment constituted installment payments for only one bribe. Citing the Commentary Note 6 to Guideline 2C1.1, Morales analogizes his receipt of bribery payments to

installments akin to a weekly paycheck. Thus he contends his two level increase must have been based in part upon pre-guideline conduct.

The addendum to the Presentence Report termed this contention "ridiculous." As the addendum observed, the bribes came from various sources, and the numerous payments in 1989 and 1990 in different amounts and at different intervals, were separate acts of bribery. The district court concluded they were, and the record bears out this conclusion. Some of the appellant's bribery schemes were implemented by phony payroll checks to the appellant's brother-in-law (Cendejas) who did not in fact work for Saikhon. Also, after November 1, 1989, apart from the Cendejas checks, appellant continued to receive interest money from Saikhon. The criminal activity included investment and repayment of money in order to promote Saikhon's evasion of income taxes and enrich the appellant. There was no error in utilizing the enhancement provision for multiple bribes occurring after the effective date of the Guideline.

The same reasoning applies to appellant's contention that the total loss under U.S.S.G. § 2F1.1 was improperly calculated so as to violate ex post facto principles. The record supports the district court's conclusion that there were post-amendment losses. Thus the application of § 2F1.1 was appropriate.

■ Appellant also contends that the grouping of offenses that occurred both before and after the Guideline provisions violates the ex post facto clause. Appellant argues that the pre-Guidelines conduct alleged in Count 1 was used in Count 3 to increase the offense level by fifteen. He argues that the court "poured over" the loss from Count 1 onto the penalty available for Count 3 in violation of ex post facto principles.

■ Here the appellant has misinterpreted the district court's sentence. The district court did not "pour over" the loss from one count to another. Instead, the district court correctly and separately considered the pre and post-Guideline conduct for each of the counts. The bribery offenses were part of a course of criminal conduct that extended beyond the effective date of the Guideline provision applied by the court. The provision was in effect at the time that the appellant committed crimes giving rise to the application of that Guideline provision. Enhancing penalties for post-Guideline conduct on acts that occurred before the Guidelines does not run afoul of the ex post facto clause. *See United States v. Ahumada–Avalos,* 875 F.2d 681 (9th Cir.), *cert. denied,* 493 U.S. 837, 110 S.Ct. 118, 107 L.Ed.2d 79 (1989). Here, as in *United States v. Castro,* 972 F.2d 1107, 1112 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993), the defendant was not sentenced for any individual offense based on a Guideline provision that became effective after that offense was completed. Rather, the conduct for which appellant was sentenced extended beyond the time when the relevant Guideline provision became effective. *See also United States v. Niven,* 952 F.2d 289, 293 (9th Cir. 1991), where the defendant was sentenced on individual counts for offenses completed before the Guidelines became effective and we held that the same losses should not be aggregated in imposing a separate, post-Guideline sentence. No such double counting occurred here.

Judge O'Scannlain's dissent takes the view that conviction for bribery on Count 3 could not, as a matter of law, have extended over a period of time because bribery is not a "continuing offense." Neither *United States v. Niven, supra,* nor *Toussie v. United States,* 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), upon which the dissent principally relies, involved a crime of bribery and are wholly inapposite. The bribery offense which the government pleaded and proved in this case began before the Guidelines went into effect and extended well beyond that date. The crime was charged as follows:

*Count 3*

1. Paragraphs 1 through 12 and 14 through 48 of Count I are hereby realleged and incorporated by reference as if set forth in full herein.

2. Beginning at a time unknown to the grand jury and continuing up to and in-

cluding March 27, 1990, within the Southern District of California, and elsewhere, defendant ROBERT A. MORALES, SR., then a public official, did knowingly and corruptly seek, accept, receive, and agree to receive the use of millions of dollars from Mario Saikhon, in return for being influenced to commit, aid in committing, collude in or allow and make opportunities for the commission of frauds on the United States, that is, among other things, setting up sham corporations designed to assist Mario Saikhon in evading the payment of taxes; in violation of Title 18, United States Code, Section 201(b)(2)(B).

The doctrine of "continuing offense" has no applicability to a situation like this where the charged criminal conduct itself extends over a period of time. The doctrine comes into play where it is contended that the actual conduct of the defendant ended but the crime continued past that time. That was the situation claimed by the government in *Toussie v. United States* where the Supreme Court held that the crime of failing to register for the draft was not a continuing offense and did not extend the five-year limitation period. Here there is no need for the government to argue that the defendant's offense continued beyond the time that he stopped seeking and receiving the illegal fruits of his bribery scheme. We thus deal with a prosecution that charged and proved in one count a scheme that extended over a period of time. The government probably could have divided the scheme into multiple counts, but the form of the indictment has never been an issue in this case,[1] and the sentence did not violate ex post facto principles.

Appellant also objects to the district court's decision not to grant him a two-level reduction for acceptance of responsibility. Appellant emphasizes that he pleaded guilty early to some charges and regretted the harm that he had done to his family. The district court rejected many of the defendant's factual assertions, pointing out that the defendant strung out his guilty pleas, forced members of his family to endure a difficult trial, and, as noted in the Presentence Report, continued to minimize his involvement in the case. The district court's determination of lack of acceptance of responsibility was not clearly erroneous. *See United States v. Daly,* 974 F.2d 1215, 1218 (9th Cir.1992).

Finally, appellant contends that the district court violated equal protection principles, discriminating against him as a member of the middle class, by assessing against him a greater sentence than against Saikhon. Appellant contends that the sentencing disparity results from the fact that Saikhon was able to negotiate for a lower sentence after agreeing to pay a fine of several millions of dollars. The difference in the sentences in fact arises from the calculations based upon the factors specified in the Guidelines, including, for this appellant, the absence of conduct qualifying him for an acceptance of responsibility reduction, his obstruction of justice, and his violation of the public trust. There is no basis for holding that the defendant's sentence or fine was in any way based upon his membership in the middle class, even if such membership qualified him for status as a member of a suspect class, which it did not. *See Dandridge v. Williams,* 397 U.S. 471, 483–87, 90 S.Ct. 1153, 1160–63, 25 L.Ed.2d 491 (1970).

AFFIRMED.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

Because I believe the majority opinion fails to perceive the Ex Post Facto Clause implications of the enhanced sentence imposed on Morales, I must respectfully dissent.

Implicit in the majority's approach to Morales's challenge to the length of his sentence is the idea that he actually committed, and was sentenced for, one, big ongoing offense. Given the premise, I would agree with the majority's conclusions. If all of Morales's conduct can be characterized as components of a single continuing offense, then surely his "offense" occurred after the effective date of the 1989 amendments and "involved more than one bribe," justifying application of the

---

1. The dissent does not challenge the sufficiency of the indictment either.

section 2C1.1(b)(1) enhancement. Just as surely, there could have been no error in lumping together all the losses caused by his offense and assessing them by reference to the November 1989 fraud loss table.

The premise upon which the majority proceeds becomes clearly exposed in its discussion of the sentencing on the group formed by Count 1, for conspiracy, and Count 3, for official corruption, which it refers to as "the bribery offenses":

> The bribery offenses were part of a continuing course of conduct that extended beyond the effective date of the Guideline provision applied by the court. The provision was in effect at the time the appellant committed crimes giving rise to the application of that Guideline provision. Enhancing penalties for post-Guideline conduct on acts that occurred before the Guidelines does not run afoul of the ex post facto clause. Here, as in *United States v. Castro,* the defendant was not sentenced for any individual offense based on a Guideline provision that became effective after that offense was completed. Rather, the conduct for which appellant was sentenced extended beyond the time when the relevant Guideline provision became effective.

Op. at 917 (citations omitted).

Alas, this premise is flawed and the majority errs as a result. I do not dispute the fact that "the *conduct* for which appellant was sentenced extended beyond the time when the relevant Guideline provision became effective." But this fact is not dispositive, and is indeed irrelevant, under our precedents.

In *United States v. Niven,* this court stated:

> "[T]he doctrine of continuing offenses should be applied only in limited circumstances." *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). An offense should not be deemed continuous "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* As this passage makes clear, *the analysis turns on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue.*

952 F.2d 289, 293 (9th Cir.1991) (per curiam) (emphasis added).

Contrary to the majority's reasoning, it is not dispositive that the corrupt behavior out of which Morales's convictions arose was ongoing and part of a single pattern of illegal conduct. What is dispositive is whether the substantive offenses to which he pled guilty in counts one and three are "continuing offenses" under the *Toussie* standard discussed in *Niven.*

I

There is no question that "[c]onspiracy is a continuing offense." *United States v. Castro,* 972 F.2d 1107, 1112 (9th Cir.1992). A conspiracy "is presumed to continue until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy." *Id.* (citation omitted). The conspiracy charged against Morales in Count 1 appears to have been ongoing from before the effective date of the Guidelines through their amendment in 1989. Thus it was proper to use the 1989 Guidelines in sentencing Morales on the conspiracy charge.

This does not, however, mean that it was necessarily proper to use the 1989 Guidelines in sentencing Morales on everything charged under Count 3. In *Castro,* we expressly "reject[ed] the government's claim that because the conspiracy lasted beyond the effective date of the Guidelines ... all other crimes committed as part of the conspiracy should be deemed to have lasted beyond that date." *Id.*

The question thus becomes whether bribery or official corruption as defined in 18 U.S.C. § 201(b)(2) is or is not a continuing offense under *Toussie.* If it is, then the district court acted properly in treating all the Count 3 losses under the amended 1989 Guidelines. But if it is not, then the district court sentenced Morales under the 1989 Guidelines for some crimes committed and completed before those Guidelines were in effect, with the result that Morales received

a harsher sentence than he would have received under the law as it existed at the time of those offenses—thus violating the Ex Post Facto Clause.

## II

*Niven* interprets *Toussie* as requiring an analysis that "turns on the nature of the substantive offense" of conviction, and the statutory language in which that offense is set forth. We are thus called upon to examine the provisions of 18 U.S.C. § 201(b)(2):

(b) Whoever—

(2) being a public official or person selected to be a public official, directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for:

(A) being influenced in the performance of any official act;

(B) being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

(C) being induced to do or omit to do any act in violation of the official duty of such official person;

shall be fined ... or imprisoned ... or both....

### A

It seems clear that this is not a criminal statute in which "the explicit language ... compels [the] conclusion" that the offense defined is a continuing one. *Niven*, 952 F.2d at 293 (quoting *Toussie* ).

On the one hand, this is not a statute in which Congress has expressly commanded that the offense be deemed to continue. Examples of such statutes are 18 U.S.C. § 3284, which says that concealment of a bankrupt's assets "shall be deemed a continuing offense"

up until the grant or denial of the final bankruptcy discharge, see *United States v. Del Percio*, 870 F.2d 1090, 1096 (6th Cir. 1989); 22 U.S.C. § 618(e), which provides that the failure of an agent of a foreign nation to register as such "shall be considered a continuing offense for as long as such failure exists," see *United States v. McGoff*, 831 F.2d 1071 (D.C.Cir.1987); and 50 U.S.C.A. § 462(d), which tolls the start of the period of limitations on the offense of failing to register for the draft so as to create an offense that continues up until the day an individual registers, or, if he never does, the day he turns twenty-six, and is thus no longer required to register, see *United States v. Kerley*, 838 F.2d 932, 935 (7th Cir.1988).

Neither, on the other hand, is this a statute whose language "clearly contemplates a prolonged course of conduct." *Toussie*, 397 U.S. at 120, 90 S.Ct. at 863. Examples in this category may include statutes that punish: a foreign seaman who unlawfully "remains" in the United States, see *United States v. Cores*, 356 U.S. 405, 408, 78 S.Ct. 875, 878, 2 L.Ed.2d 873 (1958) ("the crucial word 'remains' permits no connotation other than continuing presence"); a deported alien who "is at any time found in" this country, see *United States v. Rincon–Jimenez*, 595 F.2d 1192, 1194 (9th Cir.1979) ("This language explicitly makes it a crime for an alien to remain in this country after an illegal entry.") (dictum); or a recipient of federal benefits who "conceals" a fact affecting his continued right to payment, see *United States v. Payne*, 978 F.2d 1177, 1180 (10th Cir.1992) (dictum).

### B

The inquiry thus boils down to whether the "nature" of a section 201(b)(2) offense is "such that Congress must assuredly have intended that it be treated as a continuing one." *Niven*, 952 F.2d at 293 (quoting *Toussie*).[1]

---

**1.** The government argues that § 201(b)(2) contemplates a quid pro quo on the part of the recipient of a bribe, and that, as a result, "where ... the illegal activity that is the subject of the bribe continues over a course of years, it is logical to treat this continuing activity as part of

a continuing offense for purposes of ... the Sentencing Guidelines." *Id.* Logical it may be, but it is precisely what *Toussie* proscribes: "the analysis turns on the nature of the substantive offense, not on the specific characteristics of the

It appears that crimes that are by nature continuing offenses can generally be identified by two interrelated characteristics. First, the commission of such crimes takes place not in a moment, but over a span of time. As then-Judge Starr once lucidly explained:

> [A] criminal offense is typically completed as soon as each element of the crime has occurred. For example, a larceny is completed as soon as there has been an actual taking of the property of another without consent, with the intent permanently to deprive the owner of its use. The offense does not "continue" over time. The crime is complete when the act is complete. A "continuing offense," in contrast, is an unlawful course of conduct that does perdure.... The classic example of a continuing offense is conspiracy.

*United States v. McGoff,* 831 F.2d 1071, 1078 (D.C.Cir.1987) (footnote omitted). Thus, the Court in *Toussie* distinguished between offenses that involve a "continuing process" and those that occur as "instantaneous events." *Toussie,* 397 U.S. at 122, 90 S.Ct. at 864. The other feature displayed by continuing offenses is that the harm done to society through their commission necessarily continues on for as long as the crime is ongoing. Thus, *Toussie* observed that "[i]t is in the nature of a conspiracy that each day's acts bring a renewed threat of the substantive evil Congress sought to prevent" by making conspiracy a federal crime. *Id.* Similarly, the Court held in *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) that escape is a continuing offense, in part because of "the continuing threat to society posed by an escaped prisoner." *Id.* at 413, 100 S.Ct. at 636; *see United States v. Gray,* 876 F.2d 1411, 1419 (9th Cir.1989) (failure to appear is a continuing offense in part because it "presents a threat to society analogous to that posed by an escaped prisoner").

These two characteristics explain the holding in *United States v. Garcia,* 854 F.2d 340 (9th Cir.1988), one of the very few cases (if not the only case) that has deemed a federal crime a continuing offense under the second

prong of the *Toussie* test. The crime at issue in *Garcia* was kidnapping. Observing that the gravamen of the offense under the federal kidnapping statute was no different from what it had been at common law, *id.* at 344, we endorsed the analysis of the California Court of Appeal: "This is not a crime where in one brief window of time the crime is committed and the perpetrator and victim go their separate ways. Rather, this is a crime of continuing force upon the person, here a minor, while parents and family are kept in a constant state of anxiety." *Id.* at 343 (quotation omitted). We accordingly concluded that the federal crime of kidnapping "continues as long as the victim is held." *Id.*

In short, it is generally the nature of a continuing offense that it involves (1) an ongoing course of conduct that causes (2) a harm that lasts as long as that course of conduct persists. Although the question is perhaps a close one, I think these principles indicate that section 201(b)(2) of the bribery statute does not define a continuing offense.

As to the first point: In essence, the statute proscribes demanding, seeking, receiving, accepting, or agreeing to receive or accept a bribe. All these words describe instantaneous acts, not courses of conduct. It is true that the statute requires that the bribe be made "in return for" some future influence on the official's discharge of his duties. However, whether that future event occurs or not is absolutely immaterial as far as section 201(b)(2) is concerned. All that matters is the state of things at the moment(s) of demanding, seeking, receiving, accepting, or agreeing.

This leads to the second point: Section 201(b)(2) does not penalize a public official for performing an act he has been bribed to perform, nor for maintaining a corrupt relationship with a private party. What this statute punishes is selling one's office, or holding it out for sale. Accordingly, I think the "substantive evil" Congress intended this statute to address is best described as *the betrayal of the public trust.*

conduct in the case at issue." *Niven,* 952 F.2d at 293.

To put it another way: society is undeniably harmed by particular acts of misfeasance or nonfeasance on the part of corrupt public officials. Society is also harmed when it has officials whose corruption is ongoing, who have been bought and paid for, and so act according to the interest of their benefactors whenever the opportunity arises. In addition, however, even if they perform their duties properly, by soliciting or accepting bribes officials suggest they will or would do otherwise—and this in and of itself also causes harm. The harm done is intangible, but real enough: the undermining of public confidence, the loss of respect for and pride in our institutions. Congress simply has chosen to address this last kind of "substantive evil" in section 201(b)(2). It might have criminalized individual derelictions of duty or the maintenance of a corrupt relationship, but it did not. Instead, it penalized the sale of public office, the betrayal of the public trust.

I thus believe that section 201(b)(2) does not describe a continuing offense. When an official engages in an ongoing pattern of seeking and receiving bribes from a single source, as Morales apparently did, that does not mean that he is guilty of a "continuing" violation of section 201(b)(2) (or, for that matter, a series of such "continuing" violations). Instead, Morales could have been charged for each discrete, individual section 201(b)(2) violation he committed; but, he was not. The *continuing* nature of his conduct, meanwhile, the specific societal harm caused by his having maintained a corrupt relationship over time, is appropriately reflected in his separate conviction on Count 1 for conspiracy. *That* is the public remedy Congress has made available for dealing with the continuing offense of being in somebody's pocket.

### III

I would hold that, because official corruption under section 201(b)(2) is not a continuing offense, Morales's rights under the Ex Post Facto Clause were violated when the district court enhanced Morales's sentence by two points under section 2C1.1(b)(1) of the Sentencing Guidelines. Further, because

Morales's criminal conduct did not constitute a single offence but consisted of several discrete acts, I believe that the district court erred in grouping Count 1, which involved pre-November 1989 conduct, with Count 3 to enhance Morales's sentence beyond Count 1's statutory maximum sentence of five years. In practical result, Morales should have been sentenced at level 31 instead of level 33. Since I thus would vacate and remand for resentencing, I must respectfully dissent.