**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Michael A. YASHAR, Defendant–Appellee.**

No. 98–2356.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1998.

Decided Jan. 26, 1999.

Rehearing Denied Feb. 22, 1999.

Kaarina Salovaara, David Hoffman (argued), Office of United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellant.

John E. Farrell (argued), Katten, Muchin & Zavis, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Michael Yashar was indicted for a violation of 18 U.S.C. § 666, which makes it a federal crime for an agent of a local government or agency to embezzle, steal, obtain by fraud, or otherwise misapply property of that government or agency that is valued at more than $5000, during any one-year period in which the local government or agency receives federal benefits in excess of $10,000. The indictment alleged that Yashar was on the payroll of the Chicago City Council's Committee on Finance from June 1, 1989 until September 1, 1992. It charged that from September 1, 1991 until September 1, 1992, Yashar received $9,223 in wage payments and health insurance coverage, for which he did little or no work. In other words, the indictment alleged that he was a ghost payroller. The indictment also alleged that the City of Chicago received federal benefits in excess of $10,000 in that time period. Although the government was aware of the potential criminal violation since at least November 1994 and discussed it with Yashar at that time, it did not obtain the indictment until January 8, 1998. Yashar moved to dismiss the indictment, arguing that it was brought in violation of the five-year statute of limitations. Because Yashar signed a limited waiver in August 13, 1997 which effectively tolled the limitations period from that day forward, we review this issue as if the indictment were returned on August 13, 1997.

The district court granted the motion to dismiss, holding that the statute of limitations requires the government to confine itself to the five years preceding the indictment. Because the government conceded that benefits received by Yashar after August 13, 1992 would not meet the statutory minimum of $5000, the court held that the indictment was barred by the statute of limitation.

■■■■ This case involves a limitations issue of first impression, and thus a brief overview of limitations law may be helpful. The statute of limitations at issue here provides that "no person shall be prosecuted for any offense ... unless the indictment is found ... within five years next after such offense shall have been committed." 18 U.S.C. § 3282 (1994). An offense is committed when it is completed, *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), that is, when each element of that offense has occurred. *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C.Cir.1987). An exception has been recognized for "continuing offenses." That is a term of art, and does not merely mean an offense that continues in a factual sense. An offense is deemed "continuing" for statute of limitations purposes only when (a) "the explicit language of the substantive criminal statute compels such a conclusion," or (b) "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115, 90 S.Ct. 858. The classic example of a continuing offense is a conspiracy, but other offenses such as escape or kidnapping also may fall within those definitions. *See, e.g., McGoff*, 831 F.2d at 1078; *United States v. Garcia*, 854 F.2d 340, 343–44 (9th Cir.1988); *see also Toussie*, 397 U.S. at 134–35, 90 S.Ct. 858 (White, J., dissenting) (listing offenses traditionally considered continuing offenses). The hallmark of the continuing offense is that it perdures beyond the initial illegal act, and that "each day brings a renewed threat of the evil Congress sought to prevent" even after the elements necessary to establish the crime have occurred. 397 U.S. at 122, 90 S.Ct. 858. For those crimes, the statute of limitations does not begin to run when all elements are first

present, but rather begins when the offense expires. Therefore, for a conspiracy offense, the statute of limitatións would not run from the time of the first overt acts, but instead would run from the occurrence of the last act in furtherance.[1] Because the continuing offense doctrine extends the statute of limitations, we are admonished to construe that term narrowly. *See Toussie*, 397 U.S. at 115, 90 S.Ct. 858.

## I.

Yashar and the government agree that § 666 is not a "continuing offense" as that term is defined in *Toussie.* Instead, the government argues that the offense is a "continuing course of conduct" that straddles the limitations period. Because Yashar's conduct is permissibly charged as one offense and some conduct falls within the limitations period, the government asserts that there is no limitations problem. According to the government, *Toussie* applies only to offenses in which the defendant has completed all affirmative actions and the elements of the offense are satisfied, but the offense "continues" even without the defendant's actions. The government argues that the *Toussie* test is inapplicable to a case in which the defendant's affirmative acts or course of conduct causes the offense to continue. In those cases, the government maintains that the offense is not completed until all criminal conduct related to that scheme is exhausted. The government thus asks this court to hold that an indictment is timely as long as "a single act within the continuing course of conduct occurred after the limitations cut-off date," even if that act does not satisfy "all the elements, or any element in its entirety, within the limitations period." Brief of the United States at 25.

In response, Yashar embraces the district court's ruling that the government must establish that all elements of the crime occurred within the five years preceding the indictment. Yashar argues that the only exception to this approach is found in *Toussie,* and that § 666 is not a "continuing offense" under the *Toussie* test.

## II.

We think that neither of these approaches is consistent with the language and purpose of the statute of limitations. We will consider Yashar's theory first. A requirement that all elements must occur within the five-year period preceding the indictment would mean that the limitations period begins to run when criminal conduct is initiated, not completed. That is contrary to the explicit wording of the statute and to cases interpreting it, which establish that the limitations period runs from the date that the offense is "committed," meaning completed. Yashar's theory would collapse the limitations period for crimes that take place over time, decreasing it as the criminal conduct became more expansive. For instance, assume an embezzler stole $500 per month for 10 months. All parties concede that the amounts can be aggregated to meet the $5000 statutory minimum under § 666. *See also United States v. Sanderson,* 966 F.2d 184, 189 (6th Cir.1992) and *United States v. Webb,* 691 F.Supp. 1164 (N.D.Ill.1988) (holding that aggregation is proper if the takings are part of a single scheme). Under Yashar's theory, the limitations period would begin to run in the first month of the embezzlement because all elements of the offense must be established by conduct within the five-year period; however, the government could not bring the criminal charge until the 10th month, because until that point, the conduct would not violate § 666. Therefore, the government would have little more than 4 years, not 5 years, to bring criminal charges. This view would start the limitations countdown before an offense was committed, and would arbitrarily shorten the five-year period. Therefore, the contention that all ele-

---

1. For conspiracy statutes that do not require any overt acts, the conspiracy "continues" for limitations purposes as long as its purposes have not been abandoned or accomplished. *See United States v. Gonzalez,* 921 F.2d 1530, 1548 (11th Cir.1991); *United States v. Persico,* 832 F.2d 705, 713 (2d Cir.1987); *United States v. Brock,* 782 F.2d 1442, 1444–45 (7th Cir.1986). Because the agreement is itself criminal and it is a continuing offense under *Toussie,* the limitations period begins to run only after the agreement is terminated.

ments of the offense must occur within the five-year period cannot stand.

The government's argument, on the other hand, would treat a continuing course of conduct or scheme the same as a continuing offense under *Toussie*. As stated above, *Toussie* extends the limitations period only in cases in which Congress explicitly defines an offense as continuing, or in which the crime by its nature is such that Congress must have intended it to be considered continuing. The government would add to those factors a third one, which is whenever the *charged conduct* is continuous in nature. That would largely swallow the second factor of *Toussie*, which focuses on whether the crime by its nature is such that Congress must have intended that it be treated as a continuing one, and would eviscerate its narrow, selective approach. The focus would no longer be on Congress' wording and intent, but on the conduct charged by the prosecutor and the language of the indictment in a particular case. If the charged conduct was continuous, the court would no longer care if the statute itself delineated conduct that was continuous in nature. We reject this approach as inconsistent with *Toussie* as well as other cases, and as contrary to the purpose of the statute of limitations.

 First, we cannot agree with the government's contention that *Toussie* does not govern here, and that it is applicable only to offenses in which the defendant's affirmative actions cease and the offense continues. It is true that many continuing offenses, such as escape or bigamy, meet that definition. *See United States v. Bailey*, 444 U.S. 394, 413, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (escape is a continuing offense); *Toussie*, 397 U.S. at 134–36, 90 S.Ct. 858 (dissent) (lists continuing offenses including bigamy). On the other hand, a conspiracy is a continuing offense which may or may not involve affirmative actions by the defendant after the elements of the offense are met. In other words, the active or passive nature of a defendant's actions has never been the benchmark of a continuing offense under *Toussie*. Instead, the focus is on the statutory language. If the statute describes an offense that by its nature continues after the elements have

been met, then the offense is a continuing one regardless of the nature of defendant's actions beyond that point. This approach is consistent with the language used by other courts, which have defined "continuing offense" in a manner that would include instances of active or passive conduct by a defendant after the initial elements are met. *See, e.g., United States v. Gilbert*, 136 F.3d 1451, 1453 & n. 4 (11th Cir.1998) (continuing offenses defined as "offenses which are not complete upon the first illegal act, but instead continue to be perpetrated over time" and "the type of crime which is committed over a span of time"); *United States v. Rivera–Ventura*, 72 F.3d 277, 281 (2d Cir.1995) (" 'continuing offense' is, in general, one that involves a prolonged course of conduct," citing *Toussie*); *see also McGoff*, 831 F.2d at 1079 & n. 14.

Second, we have found little support in other circuits for the contention that if the government charges a course of conduct as one offense, that offense is not "committed" for limitations purposes until the entire course of conduct is completed. The cases in other circuits are inconclusive at best regarding this issue. Some have distinguished a continuing course of conduct from a "continuing offense," with only the latter affecting the running of the limitations period. For instance, the Tenth Circuit rejected the notion that the limitations period would be extended by a continuous course of conduct. *United States v. Jaynes*, 75 F.3d 1493 (10th Cir. 1996). In *Jaynes*, the defendant was charged with forging and passing 64 Treasury checks from April 1988 through August 1993. The court held that the forgeries were part of a single scheme and thus properly charged in one count. In considering the statute of limitations, the court declared that "a continuing offense is not the same as a scheme or pattern of illegal conduct. . . . Separate offenses may be part of a common scheme without being 'continuing' for limitations purposes." Thus, the *Jaynes* court rejected an argument identical to the one made in this case by the government, that the limitations period is extended by a continuing course of conduct just as it is extended by what *Toussie* defines to be a "continuing offense." The court ultimately rejected the

limitations challenge in *Jaynes* because the offense could be established solely by reference to post-limitations conduct. *See also United States v. Silkowski*, 32 F.3d 682, 689–90 (2d Cir.1994) (distinguishing continuing course of conduct from "continuing offense;" in defining the "offense" for restitution purposes, the court held that the statute of limitations confined the offense to conduct within the last five years because it was not a "continuing offense," even though it was a continuing course of conduct—namely, fraudulent receipt of social security checks over a 9–year period).

On the other hand, the Ninth Circuit, in a case which did not involve the statute of limitations, took a position similar to that propounded by the government. In *United States v. Morales*, 11 F.3d 915, 917–18 (9th Cir.1993), the court considered a bribery conviction based on bribes that occurred before and after the effective date of the Guidelines, but which were charged in a single count. Addressing an *ex post facto* challenge to the Guidelines sentence, the court defined the "offense" as the entire scheme. It held that the "continuing offense" doctrine of *Toussie* was inapplicable to a situation in which the charged criminal conduct itself extended over a period of time. *Id.* Similar to the government's argument in this case, the *Morales* court stated that the continuing offense doctrine "comes into play where it is contended that the actual conduct of the defendant ended but the crime continued past that time." *Id.* Although not involving the statute of limitations, the court appears to hold that an offense is not complete until the scheme is completed. The dissent in *Morales* argued that the *ex post facto* challenge hinged on whether all of Morales' conduct could be characterized as components of a single continuing offense involving multiple bribes. *Id.* at 919 (O'Scannlain, J., dissenting). The dissent stated that it could only be so considered if it met the *Toussie* test, in which " '*the analysis turns on the nature of the substantive offense, not on the specific characteristics of the charged conduct.*' " *Id.* (emphasis in original) (*citing United States v. Niven*, 952 F.2d 289, 293 (9th Cir.1991)). Because the substantive offense of bribery was not a continuing offense under *Toussie*, the dissent

asserted that the offense did not occur after the Guidelines became effective. *See also United States v. Nash*, 115 F.3d 1431, 1440–41 (9th Cir.1997) (applying *Toussie* test to determine when an offense was "committed" for purposes of applying the Guidelines; court focused on the nature of the offense not the conduct charged).

In between *Jaynes* and *Morales* are a plethora of cases in which it is difficult to determine whether the court considered the existence of a course of conduct to be relevant to the limitations issue. For instance, some cases contain sweeping language indicating that the statute of limitations is no bar where an ongoing scheme continues into the five-year period, but then clarify that the conviction must rest on post-limitations conduct. *See, e.g., United States v. Jensen*, 608 F.2d 1349, 1355 (10th Cir.1979), and *United States v. Provenzano*, 334 F.2d 678 (3d Cir. 1964) (holding that pre-limitations conduct as part of an ongoing scheme was relevant *for the purpose of* interpreting post-limitations conduct); *see also United States v. Hedman*, 630 F.2d 1184, 1199 (7th Cir.1980). Similarly, a number of other cases contain language indicating that a continuing course of conduct tolls the limitations period, but it is difficult to determine whether they involve offenses that are continuing under the *Toussie* definition, or offenses in which all elements are present within the five-year period. *See, e.g., United States v. DiSalvo*, 34 F.3d 1204 (3d Cir.1994); *United States v. Bustamante*, 45 F.3d 933 (5th Cir.1995). Therefore, the cases in other circuits are ambiguous regarding the proper approach to this issue, and certainly do not mandate adoption of the government's position, despite its protestations to the contrary.

Moreover, under the government's position, a prosecutorial decision regarding the scope of the charge would determine the running of the limitations period. In that manner, the statute of limitations, designed as a control on governmental action, would instead be defined by it. Virtually any criminal actions that extend over time could fall within this expansive definition depending upon how a prosecutor chose to charge a case. A prosecutor has a great deal of dis-

cretion in deciding whether to charge a course of conduct as a single offense or as multiple offenses. *See United States v. Berardi*, 675 F.2d 894, 898 (7th Cir.1982).[2] Under the government's argument, that charging decision could delay the running of the limitations period on the discrete offenses. For instance, a series of drug sales could be charged as a single scheme. The government could then wait to prosecute until well beyond five years after the initial drug sales, as long as at least one overt act occurred within the last five years, and regardless of whether that one act constituted an element of the charged crime. With this approach, the limitations period would be virtually unbounded. At oral argument, we posed a hypothetical to the government in which a ghost payroller received $15,000 in salary in 1970 and, 25 years later, received $300 in retirement benefits attributable to that sham employment. The government declared that the limitations period might not begin to run on the 1970 conduct until after the retirement benefits were received in 1995, if the payments were deemed to be part of a single scheme.[3] With this interpretation, the limitations period would apparently not begin to run until the person's death if that person received ongoing pension payments attributable at least in part to the ghost payrolling scheme. That example demonstrates how the prosecutor's charging decision could dramatically impact the limitations period. This approach would transform the limitations period from a check on governmental delay in prosecution to a function of prosecutorial discretion. It would gain for the government the expanded statute of limitations of a conspiracy or RICO claim, without requiring the government to prove either.

In fact, the government's approach mirrors the standard used for substantive criminal RICO violations. For those offenses, the limitations period does not begin to run until the defendant commits the last predicate act in furtherance of the offense. *United States*

*v. Persico*, 832 F.2d 705, 714 (2d Cir.1987); *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465–66 (7th Cir.1992). RICO, however, is a continuing offense under the *Toussie* definition. It criminalizes a "pattern" of activity that can include predicate acts separated in time by as much as ten years. Therefore, the nature of the offense is such that Congress must have intended it to be a continuing one, and thus an exception to the normal start of the limitations period. *See United States v. Wong*, 40 F.3d 1347, 1367 (2d Cir. 1994); *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1131 (3d Cir.1988).

The government would expand *Toussie* to apply that same test to all ongoing criminal conduct, regardless of whether that conduct falls within the framework of RICO, and without consideration of Congressional intent. That position would undermine the purpose of the statute of limitations, which is "to limit exposure to criminal prosecution to a fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions," to discourage prosecution based on facts obscured by the passage of time, and to encourage law enforcement officials promptly to investigate suspected criminal activity. *Toussie*, 397 U.S. at 114–15, 90 S.Ct. 858. Allowing the prosecution to extend the statute of limitations by charging a course of conduct would risk prosecutions based on stale facts and would not encourage prompt investigation and prosecution of criminal activity. Those goals can only be promoted by an interpretation that starts the limitations period when all elements of the crime are first present.

■ There is no hardship to the government in requiring it to present those charges within five years from the date the elements of the crime charged are first met, especially considering that it is undeniably required to do so regarding a defendant who does not continue to criminally act. Therefore, we hold that for offenses that are not continuing offenses under *Toussie*, the offense is com-

---

**2.** This discretion in charging is circumscribed to some extent by principles of duplicity, multiplicity, and double jeopardy, but even within those confines a good deal of discretion remains.

**3.** Section 666 has been interpreted as requiring that the takings occur within a twelve-month period, so this scenario would not arise under that statute. The concern is nevertheless valid as regards other criminal statutes without similar temporal restrictions.

mitted and the limitations period begins to run once all elements of the offense are established, regardless of whether the defendant continues to engage in criminal conduct. This interpretation is consonant with the purpose and language of the statute of limitations.

■ The only issue remaining, then, is whether a necessary element of the offense took place within the five years preceding the indictment. The government has charged a scheme that took place from September 1, 1991 until September 1, 1992. On the face of the indictment, we cannot discern whether the government alleges that at least $5000 in property was taken, and $10,000 [4] in benefits received, before August 13, 1992, which is the last date within the five year limitations period.[5] If those elements were not completed before August 13, 1992, then the indictment is timely. On the other hand, if all elements of the crime were met prior to August 13, 1992, such that the government could have proceeded with criminal charges prior to that date, then the indictment in this case was not timely. We must view all facts in the light most favorable to the government on a motion to dismiss, and therefore the motion must be denied at this time. For the reasons stated, the decision of the district court is VACATED, and the case remanded for further proceedings.

---

4. Of course, this element was almost certainly met prior to August 13, 1992; there can be no question that the City of Chicago receives well over this amount in far less than twelve months.

5. The government conceded that $5000 was not taken from August 13, 1992 (the last day within the limitations period), until September 1, 1992 (when the scheme, as charged, ended). Because

a total of $9223 was taken over the charged year, however, that concession leaves open the possibility that the elements were not met before August 13, 1992, either because more than $4223 of the total was taken after August 13, 1992 or because less than $10,000 was received in federal benefits before that time.