**UNITED STATES of America,**
**Appellee,**

v.

**Mohammad ARSHAD, Defendant–**
**Appellant.**

**No. 00–1199.**

United States Court of Appeals,
Second Circuit.

Submitted Aug. 28, 2000.

Decided Feb. 02, 2001.

Marcia R. Isaacson, Assistant United States Attorney (Mary Jo White, United States Attorney, Ira M. Feinberg, Assis-

tant United States Attorney, of counsel), New York, NY, for Appellee.

David L. Lewis, New York, NY, for Appellant.

Before NEWMAN, WINTER, and SACK, Circuit Judges.

SACK, Circuit Judge:

Defendant–Appellant Mohammad Arshad appeals from a judgment of the Southern District of New York (Shirley Wohl Kram, *District Judge*) imposing a sentence principally of four months' imprisonment and four months of home confinement after he pled guilty to one count of bribery with respect to a program receiving federal funds in violation of 18 U.S.C. § 666(a)(2). Arshad admitted to making several payments to an inspector employed by the New York City Housing Authority ("NYCHA") in connection with a contract for the painting of apartments in a public housing development. The district court found that Arshad's payments comprised several distinct bribes and accordingly increased his offense level by two levels pursuant to § 2C1.1(b)(1) of the United States Sentencing Guidelines ("Guidelines"). On appeal, Arshad contends that the district court should have viewed the various payments as installment payments of a single bribe. We hold that the district court properly found that discrete payments were made at different times for different forms of favorable treatment by NYCHA employees, and properly concluded on that basis that the payments constituted more than one bribe.

## BACKGROUND

Arshad was the principal of a painting company known as S & R Construction ("S & R"). In 1998, S & R was awarded a contract with NYCHA valued at more than $300,000 to paint apartments at the Baruch Houses, a public housing development in Manhattan. NYCHA, which receives federal funding, employs inspectors to ensure that apartments are properly painted and to penalize contractors for any deficiencies. NYCHA inspectors also may authorize additional payments to contractors for apartments requiring an above-average amount of work.

In June 1998, Arshad approached a NYCHA inspector and offered to do him favors if the inspector agreed not to penalize Arshad for deficiencies in painting apartments at the Baruch Houses. The inspector reported this contact and, under the supervision of the New York City Department of Investigation, recorded a series of conversations and meetings with Arshad between June and November 1998.

On June 22, 1998, Arshad offered to pay the inspector $10 for every apartment painted by S & R if the inspector would refrain from penalizing Arshad for any deficiencies. Pursuant to this agreement, Arshad paid the inspector $500 on June 26, 1998. During the meeting at which this payment was made, Arshad further offered to pay the inspector to authorize extra work-hours for S & R, and the inspector agreed.

On July 28, 1999, Arshad paid the inspector $1,000 in cash and said the sum covered sixty-two apartments and extra work-hours the inspector had approved. At that meeting, Arshad said he would pay the inspector one third of the money earned for extra hours authorized by the inspector.

Arshad subsequently paid the inspector several additional sums: $1,200 on August 26, 1998; $900 on September 30, 1998; and $200 on November 9, 1998.

In a recorded telephone conversation on November 6, 1998, Arshad asked the inspector to act as the intermediary for a $500 payment to a NYCHA superintendent for the purpose of expediting payment of funds owed to Arshad by NYCHA. The inspector agreed and, on November 12, 1998, Arshad gave the inspector $500 in cash to be paid to the superintendent.

On November 10, 1999, Arshad pled guilty before Judge Kram to a one-count

information charging him with bribery concerning a program receiving federal funds in violation of 18 U.S.C. § 666(a)(2).[1] He also entered a written plea agreement that stipulated that Arshad's base offense level for bribery under the Sentencing Guidelines was 10, see U.S.S.G. § 2C1.1(a); that a one-level increase was warranted because the total value of the payments was between $2,000 and $5,000, see id. § 2C1.1(b)(2)(A); and that a two-level reduction would apply if Arshad accepted responsibility in his plea, see id. § 3E1.1(a). The agreement noted that Arshad and the government disagreed as to whether the offense conduct involved the payment of more than one bribe for purposes of § 2C1.1(b)(1) of the Guidelines, which imposes a two-level enhancement for offenses involving more than one bribe.

In preparation for sentencing, the United States Probation Office prepared a Pre–Sentence Investigation Report ("PSR"), which included a proposed Guidelines calculation. In accordance with the plea agreement, the PSR recommended a base offense level of 10, a one-level enhancement reflecting the value of the payments, and a two-level downward adjustment for acceptance of responsibility. The PSR also agreed with the government that Arshad had made several different bribes rather than a series of payments toward a single bribe, and therefore recommended a two-level upward adjustment under § 2C1.1(b)(1). The total offense level proposed by the PSR was thus 11.

At a sentencing hearing on March 1, 2000, the district court rejected Arshad's objection to this calculation, commenting:

[T]he six payments made by Mr. Arshad to the painting inspector were intended for the accomplishment of more than[ ] one action[:] one, approval of his deficient painting work by the painting inspector; two, authorization for more work hours by the painting inspect[or]; three, expediting a building superintendent's approval for Mr. Arshad's payment. . . . It involved more than one bribe, and a two-level enhancement is appropriate.

The district court thus sentenced Arshad under an offense level of 11. Because Arshad had a criminal history category of I, the applicable range of imprisonment was 8 to 14 months. The district court sentenced Arshad to the minimum 8 months: 4 months' imprisonment and 4 months' home confinement.

Arshad's sole argument on appeal is that the district court erred by imposing the two-level enhancement for multiple bribes prescribed by § 2C1.1(b)(1).

## DISCUSSION

### I. Standard of Review

 We review a district court's interpretation of the Guidelines de novo and its related findings of fact for clear error. See United States v. Martinez-Santos, 184 F.3d 196, 198 (2d Cir.1999). We give "due deference to the district court's application of the guidelines to the facts," 18 U.S.C. § 3742(e), generally "overturn[ing] a district court's application of the Guidelines to the facts only if we conclude that there has

---

1. 18 U.S.C. § 666 states in relevant part:
 (a) Whoever, if the circumstance described in subsection (b) of this section exists—
 . . . .
 (2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

 shall be fined under this title, imprisoned not more than 10 years, or both.
 (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

been an abuse of discretion," *United States v. Rivera*, 192 F.3d 81, 87 (2d Cir.1999), *cert. denied*, 528 U.S. 1129, 120 S.Ct. 965, 145 L.Ed.2d 836 (2000), but bearing in mind that "to the extent that an application of the Guidelines is influenced by a mistaken view of the law, our review is plenary," *United States v. Rodriguez*, 928 F.2d 65, 67 (2d Cir.1991).

■ We have previously considered a district court's determination that a defendant committed more than one act of extortion for purposes of § 2C1.1(b)(1) to be a finding of fact that we review for clear error. *See United States v. Middlemiss*, 217 F.3d 112, 124 (2d Cir.2000). Two of our sister circuits have done the same with respect to the offense level for bribery convictions. *See United States v. Martinez*, 76 F.3d 1145, 1153–54 (10th Cir. 1996); *United States v. Kahlon*, 38 F.3d 467, 470 (9th Cir.1994). In the present case, we therefore review for clear error the district court's factual finding that Arshad's payments "were intended for the accomplishment of more than ... one action," and we review *de novo* the district court's legal conclusion that separate payments for more than one purpose constitute multiple bribes under § 2C1.1(b)(1). *Cf. United States v. Fernandez*, 127 F.3d 277, 283 (2d Cir.1997) (reviewing the sentencing court's "findings as to what acts were performed" for clear error and its "ruling that those facts constitute[d] attempted obstruction of justice" under the Guidelines *de novo*).

## II. Number of Bribes

Section 2C1.1(b)(1) states: "If the offense involved more than one bribe or extortion, increase [the defendant's base offense level] by 2 levels." Application Note 6 to this section reads in full:

Subsection (b)(1) provides an adjustment for offenses involving more than one incident of either bribery or extortion. Related payments that, in essence, constitute a single incident of bribery or extortion (*e.g.*, a number of installment payments for a single action) are to be treated as a single bribe or extortion, even if charged in separate counts.

U.S.S.G. § 2C1.1 cmt. n. 6.

We have not previously explored the circumstances under which multiple payments may be said to constitute a single bribe for purposes of this provision. We have, however, reached the nearly indistinguishable question of whether an enhancement is warranted under § 2C1.1(b)(1) for multiple acts of extortion, *see Middlemiss*, 217 F.3d at 124, and several other courts have explored the provision in the context of bribery convictions. From these decisions we are able to discern several factors that courts have found useful in distinguishing between multiple and single incidents of bribery.

■ The first factor, which the district court found to be determinative in the case at bar, is whether, as stated in Application Note 6, the payments were made to influence "a single action." *See Middlemiss*, 217 F.3d at 124 (upholding enhancement in sentence for extortion where final payment was "a distinct payoff" intended to achieve separate goal from earlier payments); *Martinez*, 76 F.3d at 1153 (upholding district court's finding of multiple bribes where payments were made in exchange for ongoing patient referrals); *Kahlon*, 38 F.3d at 470 (concluding that "payments to promote different applications for work papers ... were not installment payments for a single action."); *United States v. Evans*, 30 F.3d 1015, 1016–17, 1020 (8th Cir.1994) (affirming, without analysis, district court's finding that § 2C1.1(b)(1) enhancement was warranted where defendant, a state insurance examiner, accepted bribes to approve two different insurance applications), *cert. denied*, 514 U.S. 1028, 115 S.Ct. 1383, 131 L.Ed.2d 236 (1995).

■ The district court concluded that Arshad had made more than one bribe because he made discrete payments to obtain (1) "approval of his deficient painting work by the painting inspector"; (2) "au-

thorization for more work hours by the painting inspect[or]"; and (3) expedited approval by the building superintendent of payment for Arshad's past work. Because the record amply supports this finding— indeed, Arshad does not seriously contest it—we conclude that it was not clearly erroneous. We also agree with the district court's legal conclusion that the fact that different payments are intended to elicit different actions may, and does in this case, warrant treating the payments as multiple bribes and therefore imposing a two-level enhancement under § 2C1.1(b)(1).

While conceding that his payments were meant to achieve different immediate goals, Arshad contends that they were all "related to the NYCHA contract" and therefore should have been treated as installment payments toward a single bribe. Appellant's Br. at 2, 5–6. But the commentary to § 2C1.1(b)(1) forecloses this argument. In describing circumstances that may indicate a single bribe, Application Note 6 refers to payments "for a single action." U.S.S.G. § 2C1.1, cmt. n. 6.[2] Arshad would have us overlook the different "actions" his various payments were meant to elicit—approval of deficient work, authorization for more work hours, and expedited approval of moneys owed— because each payment was part of a larger scheme to obtain insulation from an overly rigorous inspection regime. Courts confronted with similar situations have uniformly held that multiple payments meant to influence more than one action should not be merged together for purposes of § 2C1.1 merely because they share a single overall goal or are part of a larger conspiracy to enrich a particular defendant or enterprise. See Middlemiss, 217 F.3d at 124 (rejecting view that single incident

of extortion took place because payments were related to same broad scheme to obtain and maintain a cafeteria lease); Martinez, 76 F.3d at 1153 (affirming conclusion that payments for separate actions "under the guise of" a single consulting contract comprised multiple bribes); Kahlon, 38 F.3d at 470 (holding that although payments to promote different work paper applications "were part of a larger conspiracy, they were not installment payments for a single action."); United States v. Goodson, No. CRIM. 96–207–002, 2000 WL 680278, at *5, 2000 U.S. Dist. LEXIS 7578, at *15 (E.D.La. May 25, 2000) (holding that defendant's consistent "end goal" to "protect his business . . . and to enrich himself and others involved" was not enough to make multiple payments a single incident of bribery).

■ A second factor used by courts to determine whether multiple payments constitute more than one bribe or related payments toward a single bribe, although not addressed by the district court in this case, is derived from the reference in Application Note 6 to "installment payments" as distinguishable from multiple bribes. Taking their cue from that language, courts have looked to whether the pattern and amount of payments bear the hallmarks of installment payments, such as a regular schedule of payments over a finite period of time toward a fixed final sum, rather than a series of intermittent and varied bribes. See Middlemiss, 217 F.3d at 124 (upholding imposition of two-level enhancement under § 2C1.1(b)(1) for multiple extortions, one consisting of regular monthly payments and the other of a lump sum payment); United States v. Morales, 11 F.3d 915, 917 (9th Cir.1993) (rejecting

2. Arshad's argument also runs afoul of the history of § 2C1.1(b)(1). The original version of § 2C1.1 did not include an enhancement for multiple bribes. As a result, "repeated instances of bribery . . . involv[ing] the same course of conduct or common scheme or plan and the same victim" were not reflected in a defendant's final offense level, because multi- ple counts of bribery in such circumstances would be grouped together pursuant to § 3D1.2. U.S.S.G. app. C, amend. 121, at 48. The Commission addressed this issue by amending § 2C1.1 in 1989 "to provide a 2 level increase where the offense involved more than one bribe." Id.

argument that multiple payments constituted installments on single bribe in part because payments "came ... in different amounts and at different intervals"); *Martinez*, 76 F.3d at 1153 (upholding finding that more than one bribery occurred where agreement "was not for a final fixed sum paid in regular installments" but instead was "open-ended" and involved occasional "bonus" payments); *Goodson*, 2000 WL 680278, at *6, 2000 U.S. Dist. LEXIS 7578, at *16 (enhancing offense level under § 2C1.1(b)(1) where payments "were separated in time" and "were ... in different amounts and took different forms").

Arshad points to a certain commonality that was shared with respect to some of the payments: they were made, if not at regular intervals or in regular amounts, at least at a fixed rate of $10 per apartment. He therefore argues that they were, in effect, "installment payments." But the payments to which he refers involve only his attempt to obtain approval for deficient work. Their commonality therefore does not support a finding that all of his payments, including those for authorization for more work hours and expedited approval of payment for past work, which did not share that commonality, together with those for approval of deficient work, were part of a single bribe.

■ Finally, courts other than the district court in this case have looked at whether the method for making each payment remains the same—whether, for example, the payments involve the same payor and payee in each instance, and whether payments are made in the same form and by the same means. *See Morales*, 11 F.3d at 917 (upholding § 2C1.1(b)(1) enhancement where "bribes came from various sources" and were implemented by various means); *Kahlon*, 38 F.3d at 470 (finding that payments from different payors to different payees "were not installment payments for a single action"); *Goodson*, 2000 WL 680278, at *5–*6, 2000 U.S. Dist. LEXIS 7578, at *15–*16 (imposing enhancement in part because bribes were paid to two different payees).

■ Arshad therefore points out that "[e]ach payment was made through the same method [i.e., cash] and made to the same inspector." Appellant's Br. at 6. But this is not enough to convert Arshad's payments into a single bribe. While the payments were all made to the inspector, in one case that inspector was but a conduit for the ultimate recipient of the funds, a superintendent who would "hurry the [defendant's] paper work." More important, while the existence of multiple payees and payment methods may demonstrate the existence of multiple bribes, *see Morales*, 11 F.3d at 917; *Kahlon*, 38 F.3d at 470; *Goodson*, 2000 WL 680278, at *5–*6, 2000 U.S. Dist. LEXIS 7578, at *15–*16, the opposite is not true: An identity of payees and payment methods does not, by itself, establish that separate payments for separate purposes constitute a single bribe. *See Middlemiss*, 217 F.3d at 124 (rejecting argument that a single incident of extortion took place because scheme involved same people and same form of cash payment). In Arshad's case, the payments were indisputably and undisputedly intended to achieve several distinct benefits for Arshad and were therefore more than one bribe irrespective of their manner of payment.

We need not determine in this case whether the first of the factors we have identified for distinguishing multiple bribes from payments toward a single bribe—the fact that the payments were made to elicit different actions—always trumps the other two factors. We cannot say that there will never be a case in which the pattern and method of payments so clearly demonstrate that they were "[r]elated payments that, in essence, constitute a single incident of bribery," U.S.S.G. § 2C1.1, cmt. n. 6, that those factors will outweigh the strong evidentiary value that we expect typically will be attached to the first factor. Because we conclude that in the present circumstances the differing

purposes of Arshad's separate payments clearly evidenced the existence of more than one bribe and because the other factors do not support his position that there was a single bribe, we affirm the district court's imposition of the multiple-bribe enhancement.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.