**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1389
_____

UNITED STATES OF AMERICA

v.

JAMES J. PEPERNO, JR.,
Appellant

_____

On Appeal from the United States District Court for the
Middle District of Pennsylvania
(District Court No. 3-21-cr-00287-001)
District Judge: Honorable Malachy E. Mannion

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 12, 2024
_____

Before: CHAGARES, *Chief Judge*, ROTH and RENDELL,
*Circuit Judges*.

(Filed: October 18, 2024)

Christian T. Haugsby
Office of United States Attorney
Middle District of Pennsylvania
Sylvia H. Rambo United States Courthouse
1501 N 6th Street,
2nd Floor
P.O. Box 202
Harrisburg, PA 17102
    Counsel for Appellee

Gino A. Bartolai, Jr.
238 William Street
Pittston, PA 18640
    Counsel for Appellant

_____

OPINION OF THE COURT

_____


**RENDELL**, *Circuit Judge*.

A jury found Defendant-Appellant James Peperno, Jr. guilty of nine counts of conspiracy to commit bribery and wire fraud and related charges. At sentencing, the District Court applied two sentencing enhancements to reflect that multiple bribes were paid and that the total value of the bribes exceeded $15,000. Peperno was sentenced to 72 months' imprisonment and has appealed, urging that the District Court wrongly denied his request for a jury instruction on his entrapment defense and erred in applying the sentencing enhancements. Because the District Court's decision to deny the request for an entrapment jury instruction and its application of the relevant sentencing

enhancements are supported by the record and applicable law, we will affirm.

## I

There are three key players in this case and in the underlying bribery scheme. First, Walter Stocki, who was engaged in litigation with the borough of Old Forge, Pennsylvania, regarding his scrapyard and construction equipment business's zoning violations. Next, Robert Semenza, Jr., Old Forge Borough Council President, who agreed to influence Stocki's zoning litigation in return for bribes. Last but not least is James Peperno, Jr., the defendant-appellant and a friend of Semenza, who, in January 2019, devised a scheme whereby he would convince Stocki to pay him and Semenza bribes in exchange for favorable progress in Stocki's zoning litigation.

## A

In January 2019, Peperno owed nearly $400,000 in restitution from a previous case in which he was found guilty of federal mail fraud. At the same time, Walter Stocki was engaged in litigation with Old Forge over his scrapyard and construction machinery business's zoning violations. When Peperno learned about the lawsuit against Stocki, he saw an opportunity to solve both of their problems and hatched a plan to help Stocki with his litigation by "act[ing] as a liaison between the borough council and the courts." Appx 968. This plan was to be paid by Stocki to influence the Old Forge Borough Council—through bribery—to come to an agreement on Stocki's litigation. Though he had no prior relationship with Stocki, he reached out to Stocki to discuss his proposal.

At their initial meeting on January 10, Peperno asked Stocki for a $20,000 up-front cash payment, plus a monthly retainer fee. Unbeknownst to Peperno, Stocki had recorded this initial meeting on his cellphone. During that meeting, Peperno told Stocki that he had spoken with Semenza about Stocki's litigation, and that Semenza could "turn the tide" in Stocki's favor. Appx 1987. When Stocki asked Peperno what he needed to do, Peperno told him, "[I]t's not going to be cheap . . . ." Appx 1992. Peperno also told Stocki they would need to use Peperno's consulting firm to make the deal look legitimate and requested $20,000 up front. Stocki told Peperno that he would not commit to paying that much without a guarantee, so Peperno called Semenza on speakerphone and told him, "[W]e're going full force with what we talked about before . . . . [W]hatever we have to do with him you are going to take care of okay . . . ." Appx 1995.

Again, Peperno insisted Stocki enter a contract with Peperno's consulting firm to make it "official," and proposed a $10,000 monthly consulting fee. Appx 1996-97. While their talks continued, Semenza called Peperno back and told Peperno, "[L]et me know what you need and what you want me to do and I'll do whatever you need." Appx 1999. After hanging up, Peperno told Stocki they could get four (out of seven) votes on the Borough Council to influence the zoning litigation, agreeing with Stocki about the need to "take care of" the councilmembers. Appx 2008. Peperno offered to arrange a meeting between Stocki and Semenza. The meeting did not happen immediately, and Stocki did not pay Peperno that day.

The following day, Stocki contacted the FBI to tell them about the meeting with Peperno.

4

Peperno and Stocki subsequently broke off communication. However, in the spring of 2019, Semenza began contacting Stocki directly to request money. In May 2019, one of Stocki's employees told the FBI that he and Stocki had been making payments to Semenza, which ultimately totaled approximately $10,000.[1] Around the same time, Semenza accused Stocki of violating an injunction that had been entered in the zoning litigation. Then, Semenza contacted Stocki frequently via text message to ask him for "loan[s]" and implied that he would continue to help Stocki with the Borough Council. Appx 226-46. Stocki provided Semenza with thousands of dollars in cash in response to these requests for "loans" but did not obtain a promissory note or repayment schedule and did not expect to be repaid. Appx 245-46. Stocki's employee recorded two of his interactions with Semenza where he paid Semenza in cash. Semenza's direct contact with Stocki and his employee ended in July 2019.

In August 2019, Stocki and his employee agreed to meet with the FBI to report their dealings with Semenza and Peperno. That fall, at the FBI's direction, Stocki began recording his conversations with Peperno and paying him with serialized cash that the FBI provided. During those recorded conversations, Peperno told Stocki that he had influence over other councilmembers and the judge presiding over the zoning litigation, who Peperno warned Stocki could impose up to $500,000 in fines.

---

[1] Stocki testified to an amount between $5,000 and $10,000. Appx 354. At sentencing, Peperno's counsel agreed the PSR was "accurate" when it gave the total as approximately $10,000. Appx 2104.

5

On October 21, 2019, Stocki paid Peperno $1,500 in cash provided by the FBI. Peperno told Stocki that whatever happened previously between Stocki and Semenza had been a mistake. Peperno asked for $2,500, and Stocki sought assurances about what Peperno could do to help him. In response, Peperno called Old Forge Councilmember James Hoover and left a message. He also told Stocki he needed another $1,000 to start putting a deal together. On October 28, 2019, Stocki gave Peperno another $1,000. Peperno deposited portions of each of these payments into his parents' bank account.

On October 30, 2019, Peperno met Stocki in person because he was concerned about saying too much over the phone. Stocki told Peperno that he had paid Semenza a "loan," but that he did not expect to be repaid. Appx 1586. Stocki told Peperno that he wanted to continue a contempt hearing in the zoning litigation that was scheduled for the following week. Peperno told Stocki that the next time he met with Semenza, "[T]here is no way he's going to do anything without money I know that." Appx 1588. Peperno agreed to speak with Semenza and let Stocki know what it would cost to get the hearing postponed.

Later that day, Peperno told Stocki that Semenza agreed to try to get the hearing continued in exchange for $5,000. Appx 1593, 1610.

On the recording, Peperno acknowledged that the deal was illegal.

In an exchange of text messages from October 31, Peperno told Semenza that if he "could pull this off," Peperno would get Semenza "steady extra work" on his payroll, and

6

asked Semenza to keep his distance from Stocki. Appx 1848. He also told Semenza that they had control of Stocki: "[W]e have the gun and he's under pressure[.]" Appx 1849. The next day, Peperno texted Semenza to ask if he wanted "to be included in anything I do," to which Semenza replied, "Yes[.]" Appx 1853.

On November 1, Peperno told Stocki that he had worked out a deal for the hearing, and that Semenza needed $5,000 and Peperno needed $1,000 for the deal to work. Appx 1610. Peperno called Semenza to say they were moving forward and asked to meet with Semenza. He told Semenza he wanted to see him "with a little bit of green." Appx 1612. Peperno hung up and told Stocki that he wanted to "take care of" Semenza, and Peperno and Stocki agreed that Stocki would give Peperno $3,500 the following day, and that Peperno would give Semenza "the other [$]2,500 when it's done." Appx 1613-14, 1634. Peperno also suggested they pay another councilmember and the Common Pleas Court's President Judge, whom Peperno could "see . . . taking cash." Appx 1615-18.

That same day, Peperno told Stocki it was a bad idea for him to meet directly with Semenza and urged that Stocki use him as a buffer. Appx 1625-26. He referenced a Lackawanna County Commissioner who had been convicted of public corruption because he accepted illicit payments without using a middleman. Appx 1626.

On November 2, 2019, Stocki provided Peperno with $2,500 in FBI prerecorded funds—Peperno chastised him for not bringing $3,500. Appx 1643-44. Stocki asked Peperno to call Semenza for reassurances. Appx 1644. Peperno called Semenza and told him that Stocki was following through on

7

his end of the deal, and Semenza "ha[d] to really perform[.]" Appx 1644-45. Semenza agreed. Appx 1645. Afterward, Peperno was observed meeting with Semenza. Peperno deposited $2,000 of Stocki's $2,500 into his parents' bank account.

On November 4, Peperno sent an email to Semenza containing a resolution proposal for Semenza to present to the Borough Council. Peperno told Semenza to get the proposal to the Borough's solicitor but not to forward the email containing it. Peperno later deleted the email from his own account. The proposal was ultimately rejected.

On November 5, Stocki paid Peperno another $1,000, again in prerecorded funds from the FBI. Peperno was recorded telling Stocki about a proposed meeting the following day where Semenza would be present to "protect" Stocki and ensure he would not get "jammed up," but instructed Stocki to avoid Semenza and "[p]retend he's your enemy." Appx 1656-57. He showed Stocki a copy of the resolution he had emailed Semenza the day before but would not allow Stocki to keep it or photograph it, to avoid "implicat[ing] people" with "hardcore evidence." Appx 1656-58. Peperno again deposited much of the FBI funds into his parents' bank account.

Ultimately, Peperno and Semenza were unsuccessful in their efforts to influence the zoning litigation against Stocki.

B

In September 2021, a federal grand jury returned an 11-count indictment charging Peperno with bribery, wire fraud, money laundering, perjury offenses, and conspiracy to commit bribery and wire fraud. Appx 22-52. Peperno pleaded not

8

guilty and, following an eight-day trial, Peperno was found guilty on all counts except for two counts of money laundering. Appx 2065-78.

The PSR calculated that Peperno's total offense level was 25 and that his criminal history category was III, yielding an advisory guideline range of 70 to 87 months' imprisonment. At sentencing, Peperno objected to the PSR's recommendation that the District Court apply two sentencing enhancements: the first because his offenses involved more than one bribe under Section 2C1.1(b)(1) of the Guidelines, and the second because the total value of the bribes paid was more than $15,000 and less than $40,000 under Section 2C1.1(b)(2). Appx 2110-11, 2103-06. The District Court overruled both objections, finding both recommendations for enhancement to be supported by the evidence.

After discussing the factors prescribed by § 3553(a) and finding that Peperno's "utterly fraudulent" intent was "very clear" and that he was motivated by "greed and power," the District Court sentenced him to 72 months' imprisonment. Appx 2129-32.

Peperno timely appealed.

II

The District Court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

III

Peperno first urges that the District Court erred when it denied his request for a jury instruction on his entrapment

defense. We review a district court's decision not to provide an entrapment instruction de novo. *United States v. Baker*, 928 F.3d 291, 295 n.7 (3d Cir. 2019).

"Entrapment is a relatively limited defense that may defeat a prosecution only when the Government's deception *actually implants* the criminal design in the mind of the defendant." *United States v. Wright*, 921 F.2d 42, 44 (3d Cir. 1990) (emphasis added) (cleaned up). The entrapment defense contains two elements: "(1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Id.* The defendant bears the initial burden of production. *Id.* To present an entrapment defense and receive an entrapment instruction, the defendant must "produc[e] evidence of both inducement and non-predisposition to commit the crime." *Id.* Once the defendant satisfies his initial burden, the burden shifts to the Government to prove beyond a reasonable doubt that it did not entrap the defendant. *Id.*

Here, Peperno did not satisfy his burden on either element.

Inducement can take different forms: "persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship." *Id.* at 45 (quoting *United States v. Fedroff*, 874 F.2d 178, 184 (3d Cir. 1989)). "[M]erely opening an opportunity for a crime is insufficient." *United States v. Dennis*, 826 F.3d 683, 690 (3d Cir. 2016). Rather, "the government's actions must have overpowered the defendant." *United States v. James*, 928 F.3d 247, 256 (3d Cir. 2019). Peperno failed to meet this standard. The evidence at trial, which included many recorded conversations between Peperno

10

and Stocki, made clear that Peperno proposed the bribery scheme during his first meeting with Stocki in January 2019 and continued proposing bribery payments throughout the fall of 2019. Peperno—not the Government—first initiated contact with Stocki on January 10, 2019, and suggested that Stocki come up with money to resolve the zoning litigation. Peperno first suggested that Stocki make payments to Semenza. And it was Peperno who called Semenza in Stocki's presence to tell him that they were "going full force with what [they] talked about before," referencing their plan to obtain money from Stocki in exchange for Semenza's influence over the litigation. Appx 1995.

Semenza confirmed at trial that he and Peperno agreed on their bribery plan prior to January 2019 and before the FBI began its investigation into Peperno. Appx 672-73. This alone supports the District Court's denial of an entrapment instruction.

Peperno focuses on the fall of 2019 when he directly received money from Stocki and urges that "Stocki was directed to contact Peperno by the FBI for the purpose of inducing him to solicit or accept a bribe" in the fall of 2019. Br. for Appellant 23. This ignores both that Peperno hatched the scheme and first pitched it to Stocki in January 2019 as well as Peperno's continued role in directing Stocki to pay bribes to both him and Semenza. One recorded conversation is characteristic of Peperno's leading role in the scheme:

> Okay. Here's what I need, not negotiable, this is the way it has to be it's the best I could do for you. I need five for Bobby [Semenza] his debt with you is clean okay if you want to give him 25 now and 25 when it's done that's fine but I

11

can't ask him to do any more than he's already done without any money.

…

I need about $1,000 of money I may have to, I may have to juice Russell [Rinaldi] a little bit. I may have to juice Junior a little bit for this thing to, those are the, that's the one vote that I need. I may need about a, I need about $1,000 for that. I need it now.

Appx 1610. Peperno was not induced or "overpowered" by the Government. *James*, 928 F.3d at 256. While it may be the case that the FBI and Stocki presented Peperno with an opportunity in the fall of 2019 to complete his bribery scheme, the scheme was his and Semenza's, not the Government's.

Peperno cannot satisfy his burden on the predisposition element, either. Predisposition is the defendant's "inclination to engage in the crime for which he was charged, . . . measured before his initial exposure to government agents." *Wright*, 921 F.2d at 45. We use five factors when considering a defendant's predisposition: character or reputation, including any criminal record; whether the suggestion of criminal activity was initially made by the government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense; and the nature of the inducement or persuasion. *Id.*

Here, Peperno failed to produce evidence to support any factor. First, as to his predisposition, he was previously convicted of federal mail fraud. He was in desperate financial circumstances—owing nearly $400,000 in restitution from his

12

previous conviction—when he first approached Stocki. And he admitted that he lied to Stocki to convince him to pay him for his "consulting business" that did not have employees, a website, a bank account, or an office. Appx 1066. As to the second factor, and as described above, Peperno first proposed the criminal activity, not the Government or Stocki. Third, regarding whether he was motivated by profit, Peperno admitted as much to the jury. Appx 960 ("I was in financial distress."); Appx 967 ("I was looking for employment. I wanted a job, and I knew Mr. Stocki was making a lot of money at the landfill . . . ."). Fourth, there was no evidence indicating that Peperno was reluctant to commit the offense. Rather, he repeatedly attempted to contact Stocki and Semenza in 2019 and proposed many ideas for how to influence the litigation. *See* Appx 1077 ("I was incessantly calling Walter Stocki when he hired me, and I couldn't get a hold of him . . . . I needed money."). Fifth and finally, the nature of the inducement or persuasion the Government engaged in did not support a finding that Peperno was not predisposed to commit the offenses. The FBI authorized Stocki to record his conversations with Peperno in the fall of 2019 and provided Stocki with serialized cash to track the bribe money. However, no evidence supports Peperno's argument that the Government's participation went beyond merely authorizing Stocki to record conversations and providing him money to pay to Peperno.

Because Peperno failed to present evidence to satisfy either element of the entrapment defense, the District Court correctly denied his request for a jury instruction.

III

13

Peperno next urges that the District Court committed procedural error by incorrectly calculating his sentencing guideline range based on both the number and the value of the bribes under U.S.S.G. § 2C1.1. This Court exercises plenary review over a district court's interpretation of the Sentencing Guidelines but reviews a district court's factual findings, including whether "the facts 'fit' within what the Guidelines prescribe," for clear error. *United States v. Caraballo*, 88 F.4th 239, 243 (3d Cir. 2023) (quoting *United States v. Richards*, 674 F.3d 215, 219 (3d Cir. 2012)).

A

First, Peperno argues that the District Court incorrectly found that the offense involved multiple bribes, and thus erred in increasing his offense level by two. Section 2C1.1(b)(1) of the Sentencing Guidelines instructs that "[i]f the offense involved more than one bribe or extortion, increase [the offense level] by 2 levels." The Sentencing Commission's commentary adds that "[r]elated payments that, in essence, constitute a single incident of bribery or extortion (e.g., a number of installment payments for a single action) are to be treated as a single bribe or extortion, even if charged in separate counts." U.S.S.G. § 2C1.1, Application Note 2. However, "multiple payments meant to influence more than one action should not be merged together for purposes of § 2C1.1 merely because they share a single overall goal or are part of a larger conspiracy to enrich a particular defendant or enterprise." *United States v. Arshad*, 239 F.3d 276, 281 (2d Cir. 2001).

We have previously assessed a non-exhaustive list of relevant factors, enumerated by the Second Circuit, when determining if a payment or payments constitute multiple bribes. *United States v. Weaver*, 175 F. App'x 506, 509-10 (3d

14

Cir. 2006) (not precedential). Those factors are: (1) "whether the payments were 'made to influence a single action'"; (2) "whether the pattern and amount of the payments bear the hallmarks of installment payments, such as a regular schedule of payments over a finite period of time toward a fixed final sum, rather than a series of intermittent and varied bribes"; and (3) "whether the method for making each payment remains the same." *Id.* (quoting *Arshad*, 239 F.3d at 280-82). No one factor is dispositive. *See Arshad*, 239 F.3d at 282. We apply these factors regularly when considering whether payments constitute one or multiple bribes, *United States v. Grosso*, 658 F. App'x 43, 46 (3d Cir. 2016) (not precedential); *United States v. Marino*, 316 F. App'x 99, 103 (3d Cir. 2008) (not precedential), and we formally and precedentially join the Second Circuit and adopt these *Arshad* factors now.

Here, the undisputed evidence demonstrates that Stocki paid Peperno on four separate occasions in varying amounts. Stocki and his employee also made multiple payments directly to Semenza, in varying amounts, in response to a slew of requests that Semenza made for varying reasons. While the payment was always in cash, the amount varied, there was no payment schedule, and payments were made in a variety of ways. Peperno's argument ignores the fact that even if the payments were all made in furtherance of influencing the zoning litigation, the payments were sought under various pretexts for different political favors.[2] Thus, under the *Arshad*

---

[2] These varying goals included ensuring that Stocki did not encounter further difficulties, interceding on Stocki's behalf with both the zoning officer and the Old Forge Borough solicitor, postponing various meetings regarding the litigation, and attempting to continue Stocki's contempt hearing. In

15

factors, the District Court did not err in finding that multiple bribes were paid during the conspiracy and properly applied a two-level enhancement under the Sentencing Guidelines.

B

Second, Peperno disputes the District Court's application of a four-level increase based on the value of the bribes. The Sentencing Guidelines establish a tiered enhancement based on "the value of the payment, the benefit received or to be received in return for the payment, [or] the value of anything obtained or to be obtained by a public official or others acting with a public official . . . whichever is greatest[.]" U.S.S.G. § 2C1.1(b)(2). The Guidelines provide a table that identifies the number of levels by which a district court should increase the defendant's offense level, based on that value. *Id.* §§ 2B1.1(b)(1), 2C1.1(b)(2).

Here, the District Court took a "conservative" approach to calculating the total value of the bribes paid during the conspiracy, finding it to be approximately $16,000. Appx 2108-09. This was comprised of $10,000 that Stocki and his employee paid Semenza during the spring and summer of 2019 and $6,000 that Stocki paid Peperno in the fall of 2019. The District Court also noted that Peperno had attempted to have Stocki pay $20,000 and had suggested that Stocki could be subject to $500,000 in contempt fines if the bribes were not paid. *Id.*

Peperno insists that the $10,000 Stocki paid directly to Semenza should not be "bootstrap[ped]" with the bribes paid

addition, the bribes were also intended to influence multiple councilmembers and other individuals.

16

directly to Peperno. Br. for Appellant 29. But the Guidelines instruct that in calculating a defendant's offense level in cases involving jointly undertaken criminal activity—including conspiracy—relevant conduct shall include all acts and omissions of others that were "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity[.]" U.S.S.G. § 1B1.3(a)(1)(B). Thus, a defendant may be held accountable for bribes and things of value provided both to him and to his coconspirators where the bribes to the coconspirators were reasonably foreseeable during the course of the conspiracy. *United States v. Whiteford*, 676 F.3d 348, 364 (3d Cir. 2012). Peperno was convicted of jointly undertaken criminal activity (i.e., conspiracy to commit bribery and wire fraud), and the District Court did not clearly err in finding that the $10,000 paid directly by Stocki to Semenza was both part of the greater conspiracy and reasonably foreseeable, given Peperno's role in setting up the relationship between Stocki and Semenza and later using the $10,000 payment as a "bargaining chip," even if Peperno did not facilitate that particular transaction. Appx 2108-09. Thus, the District Court correctly applied a four-level enhancement for a bribe exceeding $15,000 but less than $40,000. U.S.S.G. § 2B1.1(b)(1)(C).

IV

In light of the above, we will affirm the District Court's judgment of sentence.

17