

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-20-2008

# USA v. Mariano

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3398

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Mariano" (2008). *2008 Decisions.* Paper 1000.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1000

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3398
_____

UNITED STATES OF AMERICA

v.

RICHARD MARIANO,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cr-00614-1)
District Judge:  Honorable Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
June 5, 2008

Before:  FISHER, JORDAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed:   June 20, 2008)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

A jury convicted Richard Mariano of one count of conspiracy to commit honest

services fraud, eleven counts of honest services mail and wire fraud, two counts of money

laundering, three counts of bribery, and one count of filing a false tax return.  The District

Court sentenced him to 78 months' imprisonment, and he now appeals. For the reasons that follow, we will affirm the judgment of the District Court.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In 1995, Richard Mariano was elected to the City Council of Philadelphia for the Seventh District. He was re-elected in 1999 and in 2003. At trial, the government presented evidence that Mariano acted to further the interests of Erie Steel, Ltd. ("Erie Steel"), a scrap metal business in his district. In May 2002, when officials from the Air Management Services Division of the City of Philadelphia Department of Public Health ("Air Management Services") arrived to conduct an inspection of Erie Steel, Mariano called the officials, and the inspection did not take place until the following day. Mariano subsequently followed up with the officials, and Erie Steel did not fully comply with the air pollution regulations that Air Management Services enforces until 2006.

In September 2002, Mariano asked Vincent Dougherty, the Assistant Commerce Director and Keystone Opportunity Zone ("KOZ") Administrator for the City of Philadelphia, to provide a letter describing the reasons why Erie Steel could not

2

participate in the KOZ program.[1] Dougherty did so, explaining that the back taxes that Erie Steel owed precluded it from the KOZ program. On November 13, 2002, Mariano, Dougherty, and Philip Chartock, the owner of Erie Steel, met at Mariano's office to further discuss the matter. Shortly thereafter, on November 25, 2002, Louis Chartock, Philip Chartock's father, faxed a letter to Mariano asking him to introduce legislation that would allow Erie Steel to participate in the KOZ program. In February 2003, Mariano recommended Erie Steel's property to be included as one of the new properties in the KOZ program. On the basis of that recommendation, Erie Steel's property was added to the bill, and in May 2003, Mariano twice voted in favor of that bill.

The evidence further demonstrated that Philip Chartock paid Mariano over $23,000 between the months of May 2002 and December 2002. On May 10, 2002, Chartock gave Mariano a check payable to Fleet Credit Card Services in the amount of $5,873.75. On August 26, 2002, Chartock gave Mariano a check payable to William Burns in the amount of $6,672. Mariano then took the check to Joseph and Rosalia Mattioni Pellecchia, who shared a bank account with Burns, and they deposited the check and gave Mariano a cashier's check in the same amount payable to AT&T Universal Card. Finally, on December 6, 2002, Chartock gave Mariano a check payable to Recon International, Inc. in the amount of $10,900. Mariano then took the check to Vincent

---

[1] The owners of real property included in the KOZ program receive significant tax benefits, as well as various other benefits.

3

DiPentino, the owner of Recon International, Inc., and DiPentino gave Mariano a check payable to Capital One in the amount of $10,900.[2] Mariano failed to disclose these payments on his 2002 and 2003 statements of financial interest for the Commonwealth of Pennsylvania and for the City of Philadelphia.

As a result of the above and other incidents, a grand jury indicted Mariano for several offenses, and a jury trial followed. On March 17, 2006, the jury convicted Mariano of the following:  Count 1, conspiracy to commit honest services fraud in violation of 18 U.S.C. § 371; Counts 2, 3, 4, 5, and 8, honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346; Counts 10, 13, 14, 15, 16, and 17, honest services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346; Counts 18 and 19, money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); Counts 23, 24, and 25, bribery in violation of 18 U.S.C. § 666(a)(1)(B) and (b); and Count 26, filing a false tax return in violation of 26 U.S.C. § 7206(1).

On July 6, 2006, the District Court conducted Mariano's sentencing hearing. Using the applicable United States Sentencing Guidelines ("Guidelines"), the District Court concluded that Mariano's base offense level for his honest services fraud convictions was 14.  It increased that level by two points pursuant to U.S.S.G. § 2C1.1(b)(1) because it found that Chartock's payments to Mariano constituted more

---

[2]Mariano had credit card accounts with Fleet Credit Card Services, AT&T Universal Card, and Capital One, and these three checks paid Mariano's debts.

4

than one bribe, and it further increased Mariano's base offense level due to additional specific offense characteristics. It then determined the offense levels for the convictions of money laundering, bribery, and filing a false tax return, and found that Mariano had a total offense level of 28 and a Criminal History Category of I, resulting in a Guidelines range of 78 to 97 months' imprisonment. The District Court sentenced him to 78 months' imprisonment, a two-year term of supervised release, and a special assessment of $1,800. This timely appeal followed.

II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). Where, as here, a defendant has not raised the issue that the evidence was insufficient as a matter of law before the District Court, we review the issue for plain error.[3] *See United States v. Guadalupe*, 402 F.3d 409, 410 n.1 (3d Cir. 2005). To be successful, the defendant must demonstrate: "(1) the court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected substantial rights-the outcome of the proceeding." *Id.* To determine if the evidence was insufficient to sustain a conviction

---

[3]Mariano has not provided us with evidence in the record demonstrating that he raised the issue that the evidence was insufficient as a matter of law for the honest services mail and wire fraud convictions before the District Court. Even if he had, and we were to conduct a plenary review of the District Court's decision per *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002), our conclusion would be the same for the reasons described herein.

such that the court erred, "we must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002).

We exercise plenary review over the District Court's interpretation of the Guidelines, but review its factual findings for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). The District Court's burden of proof for these findings is a preponderance of the evidence. *Id.* at 568.

## III.

## A.

Mariano argues that there was insufficient evidence to support his convictions for honest services mail and wire fraud.[4] Honest services mail and wire fraud are federal offenses under 18 U.S.C. §§ 1341, 1343, and 1346. "To prove mail or wire fraud, the evidence must establish beyond a reasonable doubt (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails or interstate wire communications in furtherance of the scheme." *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001). "Honest services

---

[4]Based on this argument, Mariano is challenging his convictions for Counts 1-5, 8, 10, and 13-19. His convictions for money laundering, Counts 18 and 19, are included in this challenge because 18 U.S.C. § 1956 requires a predicate act of "unlawful activity," which, in the present case, was honest services mail fraud.

fraud typically occurs in two scenarios: (1) bribery, where a legislator was paid for a particular decision or action; or (2) failure to disclose a conflict of interest resulting in personal gain." *Id.* at 262-63.

Sufficient evidence existed for a rational trier of fact to find that Mariano committed the offenses of honest services mail and wire fraud under either the bribery theory or the failure to disclose theory.[5] As to the bribery theory, Chartock gave Mariano three separate payments, each of which occurred in close proximity to Mariano acting on behalf of Erie Steel. *See United States v. Kemp*, 500 F.3d 257, 281 (3d Cir. 2007) (holding that bribery requires "'a specific intent to give or receive something of value *in exchange* for an official act,'" and extends to agreements to provide a "stream of benefits" in exchange for official acts (quoting *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999) (emphasis in original)). Thus, a rational trier of fact could have concluded that Mariano accepted the "stream of benefits" in exchange for the

---

[5]Mariano challenges the sufficiency of the evidence based upon the failure to disclose theory, implicitly arguing that the government did not advance the bribery theory of honest services mail and wire fraud. To the contrary, the government advanced both theories throughout the course of the proceedings. First, the indictment was sufficient because it contained the elements of the offense and explained the factual basis for each count. *See United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) ("[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense . . . ."). Second, the District Court provided jury instructions, which Mariano does not contest, that included a charge as to the bribery theory. Therefore, his implicit argument that the government did not advance the bribery theory fails.

7

official acts he took to benefit Erie Steel, including his assistance on the Air Management Services and KOZ program matters.

As to the failure to disclose theory, the evidence demonstrated that Mariano took actions in an effort to benefit Erie Steel and did not disclose his financial interest as required by city and state law. *See United States v. Panarella*, 277 F.3d 678, 694 (3d Cir. 2002) (holding that "a public official who conceals a financial interest in violation of state criminal law while taking discretionary action that the official knows will directly benefit that interest commits honest services fraud"). For example, he called Air Management Services' officials on behalf of Erie Steel, and as a result, Erie Steel was able to take additional time to comply with the regulations that Air Management Services enforces. Additionally, he was involved in the entire process of trying to include Erie Steel in the KOZ program. Although Erie Steel's ultimate success in these ventures may not have come to fruition, it does not alter the fact that Mariano's actions were made in an effort to benefit Erie Steel. Thus, a rational trier of fact could have concluded that Mariano concealed his financial interests in Erie Steel, namely the payments Erie Steel's owner made to pay Mariano's credit card debts, while taking actions in an effort to benefit Erie Steel.

For these reasons, sufficient evidence existed for a rational trier of fact to find that Mariano committed the offenses of honest services mail and wire fraud.

B.

Mariano argues that the District Court erred in increasing his base offense level by two levels pursuant to U.S.S.G. § 2C1.1(b)(1) because Erie Steel's payments to him did not involve more than one bribe.[6] Section 2C1.1(b)(1) provides for such an increase where "the offense involved more than one bribe." "Related payments that, in essence, constitute a single incident of bribery . . . (e.g., a number of installment payments for a single action) are to be treated as a single bribe or extortion, even if charged in separate counts." U.S.S.G. § 2C1.1(b)(1), Application Note 2.

In the present case, the evidence demonstrated that Chartock made the payments to Mariano on different dates with several months in between each payment. Additionally, the evidence demonstrated that each of Chartock's payments to Mariano were made in close proximity to Mariano taking some distinct action on behalf of Erie Steel. The first payment occurred within four days of Mariano contacting Air Management Services. The second payment occurred approximately two weeks before Mariano contacted Dougherty

---

[6]Mariano cites U.S.S.G. § 2C1.2(b)(1) in making his arguments. Mariano appears to use this section due to some confusion in the Presentence Report ("PSR"). The PSR, upon which the District Court relied, identified the applicable Guideline for honest services fraud as U.S.S.G. § 2C1.1. However, the PSR then identified § 2C1.2(b)(1) in stating that "the offense is increased two levels because the offense involved more than one bribe to Councilman Mariano." The use of § 2C1.2 appears to be a typographical error in that the PSR initially identified the applicable Guideline, and it used the word "bribe." *Compare* U.S.S.G. § 2C1.1(b)(1) (applying the increase "[i]f the offense involved more than one bribe"), *with id.* § 2C1.2(b)(1) (applying the increase "[i]f the offense involved more than one gratuity"). As a result, we will conduct our analysis using § 2C1.1, which is the applicable Guideline for the charged offenses.

about the KOZ program and Erie Steel's eligibility for it. Finally, the third payment occurred three weeks after Mariano met with Dougherty and Chartock, and only two weeks after Mariano received a fax from Louis Chartock requesting Mariano's further assistance in the KOZ program matters. Thus, the District Court's finding that the payments were separate payments made under different circumstances, and thus were separate bribes, was not clearly erroneous.

IV.

For these reasons, we will affirm the judgment of the District Court.